UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 22-1808-DMG (JEMx)** | Date | January 13, 2023 |
| Title | ***Maha Elregragui Moqaddem v. Albert Gregory Pinto et al.*** | Page | 1 of 11 |

Present: The Honorable DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| KANE TIEN | NOT REPORTED |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT ALBERT GREGORY PINTO'S MOTION TO DISMISS AND MOTION FOR ATTORNEY'S FEES [73] [76]**

Presently before the Court are Defendant Albert Gregory Pinto's Motion to Dismiss Plaintiff Maha Elregragui Moqaddem's Second Amended Complaint ("MTD") [Doc. # 73] and a Motion for Attorney's Fees ("MAF") [Doc. # 76]. Both motions are fully briefed. [Doc. ## 79 ("MTD Opp."), 81 ("MAF Opp."), 84 ("MAF Reply"), 90 ("MTD Reply").] For the following reasons, the MTD is **GRANTED in part** and **DENIED in part**. The MAF is **DENIED**.

## I.
## RELEVANT PROCEDURAL HISTORY

Moqaddem filed this action in Los Angeles County Superior Court on February 18, 2022. Pinto removed the action to this Court on March 18, 2022, invoking this Court's diversity jurisdiction. [Doc. # 1.]

On March 24, 2022, Pinto moved to dismiss the Complaint. [Doc. # 12.] Moqaddem filed an untimely opposition to Pinto's motion to dismiss, which was stricken for failure to comply with Federal Rule of Civil Procedure 11(a). [Doc. ## 30, 35.] The Court subsequently granted Pinto's MTD for lack of opposition. [Doc. # 39.]

On May 19, 2022, Moqaddem filed her First Amended Complaint ("FAC"). [Doc. # 42.] On June 17, 2022, Pinto timely moved to dismiss the FAC. [Doc. # 59.] Moqaddem did not file an opposition, and the Court again granted Pinto's motion to dismiss, with an admonition that a failure to oppose any further motion to dismiss would result in dismissal of the action for lack of prosecution. [Doc. # 65.]

On July 5, 2022, Moqaddem filed her Second Amended Complaint ("SAC"). [Doc. # 71.] Moqaddem asserts claims for (1) breach of fiduciary duty, (2) fraud, (3) constructive fraud,

(4) civil extortion, (5) assault, (6) battery, (7) intentional infliction of emotional distress, (8) conversion, and (9) negligent misrepresentation. On July 19, 2022, Pinto filed the instant MTD. On July 22, 2022, Pinto filed the instant MAF, seeking fees incurred in relation to his first motion to dismiss.

## II.
## FACTUAL ALLEGATIONS[1]

Pinto is an attorney who met Moqaddem in a courthouse in Los Angeles in July 2017 while Moqaddem was involved in a child custody dispute. SAC ¶ 1. After soliciting her in person and on Linkedin, he agreed to represent her in her divorce from her previous spouse and a tax dispute, and began to appear on her behalf in both disputes on November 3, 2017 and December 12, 2017, respectively. *Id*. at ¶ 2. Pinto "pursued and forced" an intimate relationship with Moqaddem, beginning around this time, despite her insistence that she only wanted to be friends. *Id*. at ¶¶ 35, 37. He threatened to stop helping her with her cases whenever she tried to end their relationship. *Id*. at ¶ 35.

He agreed to accept a share in the title of her Range Rover as a retainer. SAC ¶ 4. The vehicle was paid for in full, and his name added to the title, on March 24, 2018. *Id.* at ¶ 4.[2]

In mid-April 2018, Pinto "managed to have Plaintiff . . . falsely arrested." SAC ¶ 4. Pinto told Moqaddem it was her ex-husband, John, who plotted to arrest her. *Id*. at ¶ 67. Pinto told her he would get her out on the condition that she marry him. *Id*. at ¶ 69. From approximately mid-May 2018 to June 30, 2018, Pinto and Moqaddem were married and lived together in Pasadena. Moqaddem had not intended to marry Pinto, though, and believed when they went to the Beverly Hills Courthouse that they were getting a permit that would allow them to marry in three months, not a marriage certificate. When, after six weeks, she became aware of fraudulent and abusive conduct by Pinto, she had the marriage annulled. *Id*. at ¶ 7.

Pinto became increasingly abusive in the relationship. He threatened her safety, displayed firearms, and isolated her from others. SAC ¶ 8. In April and June 2018, Pinto "used physical violence to harass and intimidate" Moqaddem, including nearly suffocating her with a

---

[1] As required by the legal standard governing MTDs, the Court assumes the truth of the factual allegations in the SAC solely for the purpose of deciding the MTD.

[2] Elsewhere, Moqaddem alleges that the vehicle was already paid in full at the time she met Pinto. SAC ¶ 41.

pillow twice and "kicking, hitting and constantly physically attacking and choking" her. *Id.* at ¶ 9. Pinto asked Moqaddem not to show photos documenting the abuse to her family. *Id.* at ¶ 23.

In June 2018, Moqaddem loaned Pinto $48,700 for a real estate transaction, with the expectation she would be repaid by July 10, 2018. Pinto did not pay her back by July, but she was able to contact as associate of Pinto's, who returned the funds to her. SAC ¶ 10. Shortly thereafter, Pinto asked her to loan him an additional $300,000 for a real estate transaction. After she refused, Pinto threatened Moqaddem that "she will see what's coming to her." *Id.* at ¶ 12.

Moqaddem moved out of the home she shared with Pinto on July 3, 2018. SAC ¶ 13. She had left several suitcases containing personal belongings, including clothing and jewelry worth at least $350,000, and $30,000 worth of cash, in a studio he occupied in Santa Monica. *Id.* at ¶¶ 13, 132. She repeatedly asked him to return these suitcases, but he refused. *Id.* at ¶ 13. Around the same time, Pinto visited Moqaddem's brother's property without permission, breaking the lock on the gate, and took the Range Rover. *Id.* at ¶ 13.

On July 11, 2018, Moqaddem told Pinto she was going to remove his name from the title of the Range Rover. The same day, Pinto had Moqaddem arrested by making false allegations that she had been violent toward him. Because she was on probation in relation to the child custody dispute, she was arrested. Pinto had falsely told police that Moqaddem caused an injury to Pinto's left eye. SAC ¶¶ 10, 15. He had actually had the injury since before he met Moqaddem. *Id.* at ¶ 61. He also deleted all emails from her phone, along with photos of injuries he had caused her, and broke her phone. *Id.* at ¶¶ 10, 20, 24.[3] Moqaddem believes that Pinto made these false allegations in retaliation for her threat to remove his name from the title of the Range Rover and her refusal to lend him additional money. *Id.* at ¶ 15.

Because the action underlying the arrest was held to be a violation of her probation, Moqaddem was incarcerated in Lynwood jail from July 2018 to November 21, 2019. SAC ¶¶ 17, 19. Pinto visited her there several times. In November 2018, he visited four times to ask Moqaddem for money in the amount of $50,000. *Id.* at ¶ 19. He also asked her not to report his domestic violence against her. He told her that he would drop the criminal case against her, or cause it to be dismissed, if she agreed. *Id.* at ¶¶ 20, 44.

While she was incarcerated, Pinto told Moqaddem and her father that the Range Rover was stored somewhere safe. But in mid-2020, Moqaddem became aware that the car was gone. While she was in jail, Pinto removed her name from the title, then sold the car without

[3] He also refused to return to her a phone containing additional photos of injuries. SAC ¶¶ 20, 23.

compensating Moqaddem. SAC ¶¶ 21-22. Pinto also sold, or kept for himself, the personal belongings in the suitcases Moqaddem had left at his apartment. *Id*. at ¶ 25. He took her passport and did not return it, and Moqaddem believes he may have sold it. *Id*. at ¶ 53.

On April 25, 2021, Pinto told Moqaddem that "if [she] would have done the right thing from the beginning by wiring the $300,000 to his personal bank account that all this would not have happened to her." SAC ¶ 12. Around this time, she discovered that Pinto had made false police reports about her that led to her arrest in April 2018. *Id*. at ¶ 67. Pinto did not actually perform the legal services he promised Moqaddem he would perform, or did not perform them to the extent he promised he would. *Id*. at ¶ 64.

When Moqaddem met Pinto, he was broke and struggling as an attorney, with no financial resources and bad credit, living in a small studio that doubled as his home office and driving a mediocre car. SAC ¶ 26. But he had a history of affairs with female clients. One client, with whom he was having an affair, asked him to hold funds the client sought to hide from her spouse, and Pinto placed the funds in his client trust account. *Id*. at ¶ 26. Pinto also once falsely accused a nurse at UCLA Medical Center of stealing his wallet and $500 from his wallet in front of Plaintiff's brother. *Id*. at ¶ 53.

## III.
## MOTION TO DISMISS

Pinto moves to dismiss Moqaddem's claims on the bases that (1) they are time-barred and (2) she has failed to assert facts to support any of her claims. Pinto further contends that a number of Moqaddem's claims are subject to dismissal pursuant to California's anti-SLAPP law, Code of Civil Procedure section 425.16. *See* MTD at 3. The Court addresses the statute of limitations argument first, and then turns to the remaining arguments.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

**B. Statute of Limitations**

**1. Fraud-Based Claims: Breach of Fiduciary Duty, Fraud, Negligent Misrepresentation, and Constructive Fraud**

In California, the statute of limitations for an "action for relief on the ground of fraud or mistake" is three years. Cal. Civ. Proc. Code § 338(d). A fraud claim does not accrue until actual damages have been sustained and the aggrieved party discovers facts sufficient to cause a reasonably prudent person to become suspicious of fraud. *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373–74 (2001). A plaintiff need not be aware of every fact necessary to establish a fraud claim. *Id.* A breach of fiduciary duty claim that is grounded in fraud is also subject to a three-year statute of limitations. *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (2014), *as modified* (May 27, 2014).[4]

The acts on which Moqaddem's fraud claims are based occurred between November 2017 and July 2018. These dates are more than three years before she filed suit, and therefore fall outside the limitations period. But Moqaddem argues that because she was incarcerated from July 2018 to November 24, 2019, and her claims accrued during this period, a tolling exception under California Civil Procedure Code Section 352 applies. *See* Cal. Civ. Proc. Code § 352.1(a) (imprisonment tolls, for up to two years, the statute of limitations when a claim accrues while a person is "imprisoned on a criminal charge"). Federal courts give effect to state tolling provisions. *Hardin v. Straub*, 490 U.S. 536, 543–44 (1989). Moqaddem's incarceration ended on November 21, 2019. SAC ¶ 19. As such, the accrual of her claims was tolled until November 24, 2019. Because the relevant statute of limitations is three years, the statute of limitations did not expire until November 24, 2022, after this action was filed. Thus, her fraud, negligent misrepresentation, and constructive fraud claims are not time-barred.

[4] If the claim is not grounded in fraud, it is subject to California's four-year catchall statute of limitations. *Id.* Because the Court determines that this claim comes within the three-year statute of limitations, it need not consider whether this claim is based in fraud or not.

### 2. Intentional Tort Claims: Assault, Battery, Emotional Distress, and Civil Extortion

In California, claims for assault, battery, intentional infliction of emotional distress, and civil extortion are subject to a two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1 (assault, battery); *Cantu v. Resol. Tr. Corp.*, 4 Cal. App. 4th 857, 889 (1992) (applying statute of limitations for intentional torts to emotional distress claim); *Berglund v. Rogers,* No. B295483, 2020 WL 373019, at *3 (Cal. Ct. App. Jan. 23, 2020), *reh'g denied* (Feb. 11, 2020) (applying the statute of limitations for intentional torts to civil extortion claim).[5] Even if Moqaddem's intentional tort claims were tolled while she was incarcerated, they accrued in November 2021 at the latest. These claims are therefore barred.

### 3. Conversion

Under California law, the statute of limitations on a conversion cause of action is three years. Cal. Civ. Proc. Code § 338(c). "[T]he general rule is well established: '[T]he statute of limitations for conversion is triggered by the act of wrongfully taking property.'" *AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 639 (2006); *see Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906, 915–16 (1996) ("it is the act of wrongfully taking the property which triggers the statute of limitations"). The alleged conversion here (as to the Range Rover and Moqaddem's personal belongings) occurred while Moqaddem was incarcerated. This claim, like the fraud claims, is not time-barred.

The Court thus will consider the arguments in support of the motion to dismiss Moqaddem's remaining claims.

## B. Breach of Fiduciary Duty

To establish a cause of action for a breach of fiduciary duty, Moqaddem must prove (1) the existence of a fiduciary relationship between Pinto and Moqaddem, (2) Pinto's breach of his fiduciary duty, and (3) damages. *Knutson v. Foster*, 25 Cal. App. 5th 1075, 1094 (2018).

Pinto contends that, by July 2018, he was no longer actively representing Moqaddem. But Moqaddem's SAC does not allege that her retention of Pinto had concluded by July. Indeed,

[5] California Penal Code Section 518 defines extortion as the "obtaining of property or other consideration from another, with his or her consent" that is "induced by a wrongful use of force or fear." Cal. Penal Code § 518. California courts have defined civil extortion in the same way as extortion under the California Penal Code. *See, e.g.*, *Flatley v. Mauro*, 39 Cal. 4th 299, 326 (2006); *Stenehjem v. Sareen*, 226 Cal. App. 4th 1405, 1423 (2014).

she alleges that she believed he had rented the house in Pasadena to "do work in her case." SAC ¶ 7. Although Pinto asks the Court to take judicial notice of the docket in Moqaddem's child custody dispute, which appears to show no entries after December 2017, this does not establish that Pinto's alleged representation of Moqaddem had concluded. The Court therefore concludes that Moqaddem has adequately alleged the existence of a fiduciary relationship.

Whether Pinto breached his duty is a more difficult question. Moqaddem asserts that Pinto breached his duty by converting her Range Rover, which she had given him for safekeeping; he pressured her to enter into a personal relationship while he was her attorney; and improperly solicited her as a client. The Court agrees that there are no plausible allegations that Moqaddem was damaged in her legal cases by Pinto's actions as a lawyer, and thus that Pinto's allegedly improper solicitation of Moqaddem does not satisfy the second element of her breach of fiduciary duty claim. But Moqaddem does allege that she put Pinto's name on the title of her car as a retainer, Pinto falsely accused her of criminal acts to have her incarcerated, and Pinto then sold that car without her consent while she was incarcerated.[6] This, at least, plausibly states a claim for Pinto's breach of his duty to Moqaddem, and for resulting damages to Moqaddem. The Court therefore **DENIES** Pinto's MTD as to this claim.

### C. Constructive Fraud

In California, a constructive fraud claim is a type of breach of duty claim where the alleged breach occurred "without an actually fraudulent intent." *See* Cal. Civ. Code § 1573(1). Unlike the breach of fiduciary duty claim, Moqaddem's allegations do not support any possibly *unintentional* breach by Pinto. The Court therefore **GRANTS** Pinto's MTD as to this claim.

### D. Fraud

The elements of fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 839 (9th Cir. 2004) (quoting *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)). Moreover, to survive a motion to dismiss under Rule 12(b)(6), allegations of

---

[6] Pinto points out that Moqaddem alleges she agreed to put his name on the title of the car as a retainer, but did not purchase the car until well after the attorney-client relationship was formed. Yet, making all inferences in Moqaddem's favor, it is plausible that Moqaddem made this promise in late 2017 but did not make good on it until several months later, especially in light of her allegations that she was also engaging in an intimate relationship with Pinto in exchange for legal services.

fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Moqaddem points in her Opposition to Pinto's statement that he was safely storing her car and personal belongings as fraudulent. This is sufficient to survive a motion to dismiss. Moqaddem alleges that this statement was false, and that Pinto had actually sold her belongings. This allegation makes clear that Pinto *knew* the statement was false, and demonstrates an intent to defraud. Moqaddem also indicates that she relied on this statement, to her detriment. Whether her reliance was reasonable is less clear—it is difficult to understand why someone would believe such a statement from an ex-husband who had filed false charges against her—but, in light of her allegations that Pinto repeatedly told her he could get her out of jail and Pinto's repeated visits, the Court infers that she did not realize at that time that Pinto had falsely accused her of committing a crime. And her reliance resulted in damage to her, since Pinto ultimately disposed of her belongings, including her car, without her knowledge. Moqaddem's allegations that Pinto had history of affairs with female clients and improper use of his client trust account also supports this claim. The Court therefore **DENIES** Pinto's MTD as to this claim.

### E. Negligent Misrepresentation

Moqaddem's allegations do not, however, support a negligent misrepresentation claim. "Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (1992), *as modified* (Nov. 12, 1992).

Moqaddem's allegations regarding Pinto's assertion that he would keep her belongings safe do not support the possibility that Pinto could have honestly believed that his misrepresentations were true. Nor do the other alleged misrepresentations Moqaddem identifies support a negligent misrepresentation claim. Even if Moqaddem did truly believe Pinto when, as her lawyer, he said he would "get her son back" or "get her money back" from the IRS, or help her get out of jail in April 2018, these do not rise to the level of misrepresentations, and Moqaddem alleges only in conclusory fashion that Pinto failed to protect her interests in the cases in which he represented her. Moqaddem alleges that Pinto took her along to visit an opthamologist, with whom Pinto allegedly conspired to mislead Moqaddem regarding the state of Pinto's right eye, but even if this was a misrepresentation, there appears to be no tie between this alleged misrepresentation and any injury to Moqaddem as a result of her reliance thereon. Because Moqaddem has not identified a misrepresentation that can plausibly serve as the basis for her negligent misrepresentation claim, the Court **GRANTS** Pinto's MTD as to this claim.

**F. Conversion**

To prove her conversion claim, Moqaddem must allege (1) her "ownership or right to possession of" property; (2) Pinto's "conversion by a wrongful act or disposition of" that property; and (3) damages. *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). Moqaddem has met this burden. Pinto argues that Moqaddem abandoned her property, and that her loss of that property was due to her own actions because she was incarcerated for assaulting him. But neither of these theories finds support in Moqaddem's allegations in the SAC. The Court therefore **DENIES** Pinto's MTD as to this claim.

**G. Anti-SLAPP Motion to Strike**

**1. Legal Standard**

California's anti-SLAPP statute "permits a defendant to pursue early dismissal of meritless lawsuits arising from conduct by the defendant in furtherance of the right of petition or free speech." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network*, 742 F.3d 414, 419 (9th Cir. 2014); Cal. Civ. Proc. Code § 425.16. Resolution of an anti-SLAPP motion calls for a two-step procedure. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003). First, the defendant must show that the challenged action arises from protected activity—*i.e.*, "the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue[.]'" *See id.* (*quoting* Cal. Civ. Proc. Code § 425.16(b)(1)). The second step requires the plaintiff to demonstrate a probability of prevailing on his or her claims. *Id*. If the court determines that the plaintiff seeks relief "based on allegations arising from activity protected by the statute, the second step is reached." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

During the second step's analysis, a federal court examines the basis of the anti-SLAPP motion and then analyzes the merits of the plaintiff's claim under either the federal motion to dismiss or summary judgment standard, depending on whether the motion challenges the legal sufficiency or the factual sufficiency of the claim. *See Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 848-49 (N.D. Cal. 2020) (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-34 (9th Cir. 2018)).

**2. Discussion**

Here, Pinto argues that his police reports (which Moqaddem asserts are false) constitute a protected activity subject to the anti-SLAPP statute under both the right to petition and litigation privilege. *See Kenne v. Stennis*, 230 Cal. App. 4th 953, 967 (2014) (making allegedly false police reports constitutes protected activity if the parties dispute whether the reports were false). He further argues that this protected activity is the background to nearly all of Moqaddem's causes of action.

Moqaddem contends that the allegations constituting protected activity do not form the main bases of her causes of action. Indeed, although Pinto's allegedly false police reports are certainly relevant to all her claims, her surviving claims (for breach of fiduciary duty, fraud, and conversion) turn primarily on Pinto's alleged conversion of her car and belongings, not those reports. Still, because Moqaddem seeks relief based at least in part on the allegations arising from protected activity, the second step is reached. *See Baral*, 1 Cal. 5th 376, 396. The second step, however, is the same as the Rule 12(b)(6) analysis, since Pinto challenges the legal sufficiency of Moqaddem's claims. Because the Court has already concluded that certain of Moqaddem's claims do not survive the Rule 12 analysis, the Court **DENIES** the anti-SLAPP motion **as moot** as to those claims. As to the claims the Court finds *do* survive Rule 12, the Court **DENIES** the anti-SLAPP motion because Moqaddem has shown a likelihood of success on the merits.

## IV.
## MOTION FOR ATTORNEY'S FEES

California's anti-SLAPP statute provides that the court must award fees to a "prevailing defendant" on an anti-SLAPP motion. Cal. Civ. Proc. Code § 425.16(c)(1). Pinto seeks to recover, as a prevailing defendant, the fees he incurred in litigating the motion to dismiss Moqaddem's original Complaint. The Court granted that motion for lack of opposition after striking Moqaddem's Opposition for failure to comply with Rule 11. As Pinto notes, when Moqaddem filed her First Amended Complaint, she dropped her claims for: libel or slander, filing a false police report, violation of California Penal Code section 496(a) (which prohibits receiving stolen property), and her request for injunctive relief.

Because the motion was granted for lack of opposition (after Moqaddem's opposition was stricken for non-compliance with procedural rules), and Moqaddem voluntarily dismissed them thereafter, the Court cannot conclude that Pinto was a prevailing defendant as to the entire motion. This Court has previously noted that, where a plaintiff is granted leave to amend a

complaint that is the subject of an anti-SLAPP motion to strike in federal court, and the plaintiff's amendment does not re-assert the claims that were the subject of the motion, "then the purposes of the state statute would still be served, thereby obviating the need to award fees otherwise available in the anti-SLAPP statute." *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1156–57 (C.D. Cal. 2010) (citing *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004)).[7] The Court therefore **DENIES** Pinto's MAF.

## VI.
## CONCLUSION

In light of the foregoing, Pinto's MTD is **GRANTED** as to Moqaddem's assault, battery, emotional distress, civil extortion, constructive fraud, and negligent misrepresentation claims. Moqaddem does not request leave to amend, and because she has already amended her complaint twice, the Court concludes amendment would be futile. Those claims are therefore dismissed, **without leave to amend**.

The MTD is **DENIED** as to Moqaddem's breach of fiduciary duty, fraud, and conversion claims. Pinto shall file an answer to those claims by **February 3, 2023**.

Pinto's MAF is **DENIED**.

**IT IS SO ORDERED**.

---

[7] This distinguishes the procedure in federal courts from that in state courts, where claims subject to an anti-SLAPP motion are generally not subject to amendment. *See Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001) (leave to amend following successful anti-SLAPP motion in state court "would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy").